1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JERRY GARCIA, | ) | Case No. ED CV 14-2117-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

On October 16, 2014, plaintiff Jerry Garcia filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision:  (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of plaintiff's treating physician Dr. Sacho Kondovski; and (2) whether the ALJ properly considered plaintiff's credibility.  Memorandum in Support of Complaint ("P. Mem.") at 4-16; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-8.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err in failing to either credit or explicitly reject plaintiff's physician's opinion when determining plaintiff's physical limitations because the opinion was of no probative value.  In addition, the ALJ gave clear and convincing reasons for partially discounting plaintiff's credibility. Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-three years old on his alleged disability onset date, speaks and understands English and has a tenth or eleventh grade education.  AR at 44, 58, 247, 317, 319.  His past relevant work was as a supermarket meat cutter. *Id.* at 44, 67, 580.

On April 7, 2011 plaintiff filed an application for SSI, and on April 29, 2011 plaintiff filed an application for a period of disability and DIB, due to back and neck pain, anxiety, and depression.  *Id.* at 111, 112, 318.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing.  *Id.* at 143-49, 151-61, 163-64.

On November 19, 2012, plaintiff, represented by an attorney, appeared and testified at a hearing before the ALJ.  *Id.* at 56-76.  The ALJ continued the hearing to permit plaintiff additional time to augment the record.  *Id.* at 70-76.  On March 1, 2013, plaintiff, represented by the same counsel, appeared and testified at a

second hearing before the ALJ. *Id.* at 29-42. The ALJ also heard testimony from

vocational expert ("VE") Bonnie Sinclair. *Id*. at 43-52. On March 8, 2013, the

ALJ issued a partially-favorable decision, granting in part and denying in part,

plaintiff's claims for benefits. *Id.* at 10-22.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity

since December 21, 2010, the alleged onset date. *Id.* at 12.

At step two, the ALJ found that plaintiff suffered from the following severe

impairment: degenerative disc disease of the lumbar spine. *Id*. The ALJ also

determined plaintiff's hypertension and anxiety do not qualify as severe

impairments. *Id.* at 12-15.

At step three, the ALJ found that plaintiff's impairments, whether

individually or in combination, did not meet or medically equal one of the listed

impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing").

*Id.* at 15.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

determined plaintiff had the RFC to perform light work as defined in 20 C.F.R.

§§ 404.1567(b) and 416.967(b), but with the functional limitations that plaintiff

could: lift or carry 20 pounds occasionally and 10 pounds frequently; stand or

walk for four hours out of an eight-hour workday with regular breaks, but for one

hour at a time; alternate between sitting and standing, at will; sit for four hours out

of an eight-hour workday with regular breaks, but for one hour at a time;

occasionally push and pull with the lower extremities; occasionally kneel, stoop,

---

[1]   Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,
1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step
evaluation, the ALJ must proceed to an intermediate step in which the ALJ
assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486
F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  crawl, and crouch.  *Id.*  Additionally, plaintiff cannot work at heights and cannot

2  climb ladders, ropes, or scaffolds.  *Id.*

3        The ALJ found, at step four, that plaintiff is not capable of performing his

4  past relevant work as a supermarket meat cutter.  *Id.* at 20.

5        At step five, the ALJ noted that after his alleged disability onset date,

6  plaintiff changed age categories under the Medical Vocational Guidelines (20

7  C.F.R. part 404, Subpart P, Appendix 2 ("Grid Rules").  *Id.* at 20.  Relying on the

8  VE's testimony, the ALJ determined that prior to October 5, 2012, jobs existed in

9  significant numbers in the national economy that plaintiff could perform,

10  including cashier, information clerk, and mail clerk.  *Id.* at 31.  However, once

11  plaintiff became an individual of advanced age under the Grid Rules, the ALJ

12  found there were no jobs in the national economy plaintiff could perform.  RT at

13  20-21; *see* 20 C.F.R. §§ 404.1563, 416.963.  Consequently, the ALJ concluded

14  that prior to October 5, 2012, plaintiff did not suffer from a disability as defined

15  by the Social Security Act, but plaintiff became disabled under the Act on that

16  date.  *Id.* at 20-22.

17        Plaintiff filed a timely request for review of the ALJ's decision, which was

18  denied by the Appeals Council.  *Id.* at 1-4.  The ALJ's decision stands as the final

19  decision of the Commissioner.

20  **III.**

21  **<u>STANDARD OF REVIEW</u>**

22        This court is empowered to review decisions by the Commissioner to deny

23  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

24  Administration must be upheld if they are free of legal error and supported by

25  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

26  (as amended).  But if the court determines that the ALJ's findings are based on

27  legal error or are not supported by substantial evidence in the record, the court

28  may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

4

1    *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

2    1144, 1147 (9th Cir. 2001).

3         "Substantial evidence is more than a mere scintilla, but less than a

4    preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

5    "relevant evidence which a reasonable person might accept as adequate to support

6    a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

7    F.3d at 459.  To determine whether substantial evidence supports the ALJ's

8    finding, the reviewing court must review the administrative record as a whole,

9    "weighing both the evidence that supports and the evidence that detracts from the

10   ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

11   affirmed simply by isolating a specific quantum of supporting evidence.'"

12   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243

13   (9th Cir. 1998)).  If the evidence can reasonably support either affirming or

14   reversing the ALJ's decision, the reviewing court "'may not substitute its

15   judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016,

16   1018 (9th Cir. 1992)).

### IV.

### DISCUSSION

**A.    The ALJ Is Not Required to Consider a Non-Probative Medical**
       **Opinion Provided Outside the Relevant Time Period**

21        On October 26, 2012, Dr.  Sacho Kondovski, plaintiff's primary care

22   physician since July 27, 2010, completed two check-box forms indicating

23   plaintiff had extreme work-related mental and physical limitations.  AR at 619-

24   24.  The ALJ explicitly stated he accorded little weight to Dr. Kondovski's

25   opinion regarding plaintiff's mental limitations, because he is not a mental health

26   specialist. *Id.* at 15.  Petitioner argues the ALJ failed to state whether he

27   accepted or rejected Dr. Kondovski's opinion of plaintiff's physical limitations,

28   failed to state what weight, if any, he afforded the opinion, and failed to provide

specific and legitimate reasons supported by substantial evidence for rejecting this treating physician's opinion.  P. Mem. at 4-7.

Before addressing the ALJ's written opinion, the court notes a review the administrative record plainly reveals the ALJ gave no weight to Dr. Kondovski's opinion.  During the administrative hearing held on November 19, 2012, the ALJ questioned plaintiff's attorney about the veracity of Dr. Kondovski's medical opinions.  *Id.* at 58-62.  After noting the doctor listed "some very extreme limitations" (*id.* at 58), plaintiff testified about some of his normal daily activities, and then the following exchange ensued between the ALJ and petitioner's attorney ("Atty"):

ALJ:  [D]o you see what I'm getting at, Ms. Steel?  When I see limitations like this: no useful ability to function, you know, no ability to do semi-skilled work, to maintain socially appropriate behavior, you're talking about somebody that's basically psychopathic, somebody that probably should be institutionalized, okay?  This isn't this man.  He goes to church.  He's an usher.  They're not going to have him usher if he can't control himself in public, okay?  So when I see a doctor saying such extreme things — and I thought they were extreme because I didn't see anything else in the medical [records] to support those statements, okay?  **It makes *everything* that doctor says suspect.**  Do you see what I'm saying, Ms. Steel?

Atty:  I understand, your honor, and I think there's – it's certainly true that that doctor is not a psychiatrist –

ALJ:  Well, certainly, that's –

Atty:  – and I don't – I don't think there's any indication that he – you know, he would claim to be, so I –

6

ALJ:   But – and I mean, I'm looking at Mr. Garcia and I don't think
he's trying to mislead me, but he seems like a depressed human
being, you know, and I feel bad for him.  So I mean, I'm not –
I'm not saying he's not depressed or doesn't have problems,
but when your medical source statement makes these
**outlandish statements** in light of the record and in light of the
claimant's testimony, what he is able to do, I just – **I shrink
away from that doctor**.

*Id.* at 61-62 (emphasis added); *see also id.* at 39-40, 48-49.  Following this exchange, the ALJ advised plaintiff's attorney to gather additional medical records and opinions from other sources.  *Id.* at 62-76.  The ALJ continued the hearing for several months to accommodate augmentation of the record.  *Id.*

Accordingly, contrary to plaintiff's assertion that if the ALJ properly considered Dr. Kondovski's opinion, "he more than likely would have come to a different conclusion regarding plaintiff's ability to obtain and sustain full-time employment," the record is quite clear regarding how much weight the ALJ afforded Dr. Kondovski's medical opinions.  *See id.* at 39-40, 48-49, 61-62. Nonetheless, plaintiff is correct that the ALJ did not explicitly reject Dr. Kondovski's opinion regarding plaintiff's physical limitations in his written decision.

The ALJ does acknowledge and describe plaintiff's physical limitations as opined by  Dr. Kondovski.  *Id.* at 18.  Dr. Kondovski found plaintiff could: lift and carry less than ten pounds; sit, stand, or walk less than two hours in an eight-hour day and should have the option to sit or stand; lie down every one to two hours; occasionally twist, stoop, and climb stairs; and was limited in his ability to reach overhead, push, pull, kneel, and crouching.  *Id.* at 19; *see id.* at 622-24. Dr. Kondovski further opined plaintiff should avoid even moderate exposure to extreme cold or heat, wetness, humidity, noise, fumes, dust, odors, gases, poor

1   ventilation, and hazards; and plaintiff would be absent more than three times a

2   month.  *Id.* at 19, 624.

3       The limitations opined by Dr. Kondovski were greater than those in

4   plaintiff's RFC as determined by the ALJ.  Thus, it is apparent that the ALJ did

5   not credit, at least to any significant extent, Dr. Kondovski's opinion.  In general,

6   where, as here, a treating physician's opinion is contradicted by other medical

7   opinions, the ALJ must provide specific and legitimate reasons supported by

8   substantial evidence for rejecting it.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

9   1996).  Defendant points to various reasons the ALJ might have given for

10  rejecting Dr. Kondovski's opinion, including its inconsistency with Dr.

11  Kondovski's own treating records for plaintiff, and that it conflicts with other

12  medical opinions.  D. Mem. at 4-5.  Although, during the administrative hearing,

13  the ALJ certainly suggested these as reasons, as discussed above, in his written

14  decision the ALJ did not give these or any other reasons for rejecting Dr.

15  Kondovski's opinion.  The court's review is limited to the reasons actually given

16  by the ALJ, not those he could have given.  *See Orn v. Astrue*, 495 F.3d 625, 630

17  (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the

18  disability determination and may not affirm the ALJ on a ground upon which he

19  did not rely." (citation omitted)).

20      Had the ALJ found plaintiff was not disabled at all, the court would be

21  inclined to find the ALJ erred in failing to provide reasons in his written decision

22  for rejecting Dr. Kondovski's opinion, notwithstanding that the ALJ effectively

23  gave such reasons during the administrative hearing.  But the ALJ did find

24  plaintiff was disabled, beginning on October 5, 2012.  AR at 22.  Thus, the

25  question is whether the ALJ erred in neither crediting nor giving reasons for

26  rejecting Dr. Kondovski's opinion with respect to the question of whether

27  plaintiff was disabled during the period from the December 21, 2010 alleged

28  onset date to October 5, 2012.

1    As to this question and time period, the court finds the ALJ did not err, as
2 Dr. Kondovski's opinion has no probative value for the time period in question.
3 *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (finding no error
4 when the "ALJ ignored a subsequent medical review"  because an "ALJ is not
5 required to discuss evidence that is neither significant nor probative").  Dr.
6 Kondovski's opinion is dated October 26, 2012 – three weeks after October 5,
7 2012.  *Id.* at 624.  The opinion fails to indicate an onset date, and thus there is no
8 basis to conclude the opinion pertains to the period before October 5, 2012.  This
9 is particularly so because, although Dr. Kondovski treated plaintiff throughout
10 the pre-October 5, 2012 period, there is nothing in those treatment records to
11 suggest Dr. Kondovski found plaintiff suffered from the limitations opined on
12 October 26, 2012.  *See* AR at 591-617; *see also* AR 18 (ALJ noting Kondovski's
13 treatment records "revealed lumbar tenderness and moderate pain with range of
14 motion," with plaintiff "merely prescribed oral analgesics for pain").  And
15 despite the form's mandate to "identify particular medical findings" to support
16 the opinion, Dr. Kondovski simply checks boxes and references plaintiff's
17 lumbar disc disease and chronic low back pain. *Id.* at 622-24; *see Molina v.*
18 *Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Crane v. Shalala*, 76 F.3d
19 251, 253 (9th Cir.1996) ("ALJ may 'permissibly reject[ ] ... check-off reports that
20 [do] not contain any explanation of the bases of their conclusions.'")).
21    The lack of retroactive implication, failure to cite supporting medical
22 evidence, and that the opinion was written at such a time when plaintiff was
23 already deemed disabled as defined by the Social Security Act, renders Dr.
24 Kondovski's opinion of no probative value.  As such, the ALJ did not err in
25 failing to either credit the opinion or explicitly reject it and provide reasons for
26 doing so.
27
28

1

**B.**     **The ALJ Properly Discounted Plaintiff's Subjective Complaints**

2    The ALJ considered plaintiff's subjective complaints in arriving at his

3   RFC, but discounted plaintiff's subjective complaints of complete disability.  AR

4   at 16-17.  Plaintiff contends the ALJ failed to make a proper credibility

5   determination.  P. Mem. at 7-16.

6    An ALJ must make specific credibility findings, supported by the record.

7   Social Security Ruling ("SSR") 96-7p.[2]  To determine whether testimony

8   concerning symptoms is credible, the ALJ engages in a two-step analysis.

9   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ

10   must determine whether a claimant produced objective medical evidence of an

11   underlying impairment "'which could reasonably be expected to produce the

12   pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947

13   F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there is no evidence of

14   malingering, an "ALJ can reject the claimant's testimony about the severity of

15   her symptoms only by offering specific, clear and convincing reasons for doing

16   so."[3]  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted);

17   *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

18

19

_____

20   [2]   "The Commissioner issues Social Security Rulings to clarify the Act's

21   implementing regulations and the agency's policies.  SSRs are binding on all

22   components of the SSA.  SSRs do not have the force of law.  However, because

     they represent the Commissioner's interpretation of the agency's regulations, we

23   give them some deference.  We will not defer to SSRs if they are inconsistent with

     the statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th

24   Cir. 2001) (internal citations omitted).

25

26   [3]   Defendant suggests the ALJ was only required to provide specific reasons

     supported by substantial evidence, rather than clear and convincing reasons.  D.

27   Mem. at 6-7 (citing, inter alia, SSR 96-7p).  But the Ninth Circuit has explicitly

     rejected that argument.  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir.

28   2014).  Accordingly, this court applies the clear and convincing standard.

1   "[A]n ALJ does not provide specific, clear, and convincing reasons for
2   rejecting a claimant's testimony by simply reciting the medical evidence in
3   support of his or her residual functional capacity determination." *Brown-Hunter*
4   *v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).   To permit a meaningful review of
5   the ALJ's credibility determination, the ALJ must "specify which testimony [he]
6   finds not credible, and then provide clear and convincing reasons, supported by
7   evidence in the record, to support that credibility determination." *Id.*   The ALJ
8   may consider several factors in weighing a claimant's credibility, including:
9   (1) ordinary techniques of credibility evaluation such as a claimant's reputation
10  for lying; (2) the failure to seek treatment or follow a prescribed course of
11  treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d
12  1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

13       At the first step, the ALJ found that plaintiff's medically determinable
14  impairments could reasonably be expected to cause the symptoms alleged.  AR
15  at 21.  At the second step – although the ALJ stated plaintiff's allegations are
16  inconsistent with the evidence in the record, "which indicates an attempt by the
17  [plaintiff] to exaggerate," and the ALJ had previously noted plaintiff's
18  psychological test scores had to be "considered with caution due to [plaintiff]'s
19  poor effort" – the ALJ did not discount plaintiff's credibility due to malingering.
20  AR at 14, 16; *see also id.* at 35-36, 47-51.  Thus, the ALJ was required to
21  provide clear and convincing reasons for discounting plaintiff's credibility.
22  *Smolen*, 80 F.3d at 1281.

23       As an initial matter, plaintiff argues the ALJ failed to identify which of his
24  specific statements were rejected and which were accepted.  P. Mem. at 8-9.  The
25  court disagrees.  The ALJ discussed plaintiff's "allegations of disabling back
26  problems," claims that plaintiff "could not work due to anxiety, depression, and
27  stress," and plaintiff's "allegations concerning the intensity, persistence and
28  limiting effects of his symptoms."  AR at 16.  In assessing plaintiff's RFC, the

1    ALJ also specifically credits plaintiff's complaints that are consistent with his

2    wife's credible testimony about plaintiff's need for breaks between extended

3    periods of sitting, and standing or walking, and plaintiff's account of his

4    difficulty with bending and the back pain that radiates down his legs. *Id.* at 19.

5         The ALJ found plaintiff's subjective complaints only partially credible

6    because (1) he has not received the type of treatment expected for a totally

7    disabled individual; (2) his daily activities are inconsistent with his claimed

8    limitations; and (3) the objective medical evidence does not support the severity

9    of his complaints. AR 1516-18.

10        First, the ALJ found plaintiff received only routine, conservative treatment

11   for both his physical and mental impairments. AR at 17. Plaintiff's primary care

12   physician treated his degenerative disc disease primarily with oral analgesics and

13   treated his anxiety with psychotrophic medications. *Id.* at 17-18, 42, 447-48,

14   450-51, 612-14, 616-17; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001,

15   1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with

16   medication are not disabling for the purpose of determining eligibility for SSI

17   benefits."). Although a surgical solution was suggested to plaintiff by Dr. Uppal

18   and Dr. Bergey, two doctors connected to plaintiff's Worker's Compensation

19   claim, as of the ALJ's findings plaintiff had not undergone surgery. *Id.* at 18-19,

20   466-67, 471-75, 583-84; *see Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

21   2007) ("evidence of 'conservative treatment' is sufficient to discount a

22   claimant's testimony regarding severity of an impairment") (citation omitted);

23   *John v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (reasoning "conservative

24   treatment" is indicative of "a lower level of both pain and functional limitation");

25   SSR 96-7p ("the [plaintiff]'s statements may be less credible if the level or

26   frequency of treatment is inconsistent with the level of complaints"); *see also*

27   *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).

28

1    Second, plaintiff's testimony regarding his own ability to function

2  contradicted his claims of totally disabling limitations.  AR at 16.  Despite

3  plaintiff's claims of severe anxiety affecting his concentration, reportedly he can

4  follow instructions, read, watch sports, drive alone, pay bills, count change, go

5  shopping, spend time with others at church and in social groups and gets along

6  with authority figures.  *Id.* at 16-17, 42, 332, 335-36, 339-344.  Plaintiff also

7  testified he regularly attended church where he acted as an usher and helped

8  other parishioners throughout the service.  *Id.* at 60, 343.  Plaintiff reported other

9  physical activities inconsistent with totally disabling limitation, such as the

10  ability to do household chores, including cooking, vacuuming, mopping, and the

11  ability to walk 1-2 miles with breaks, garden, and plant flowers.  *Id.* at 16-17,

12  332, 336, 341-43.  Inconsistency between a claimant's alleged symptoms and his

13  daily activities may be a clear and convincing reason to find a claimant less

14  credible.  *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346.  Here,

15  plaintiff's daily activities such as following directions, walking, driving, and

16  interacting socially appear inconsistent with his alleged marked or extreme

17  limitations.

18    Third, the ALJ found plaintiff's subjective complaints inconsistent with

19  the objective medical evidence.  AR at 17-20.  An ALJ "may not reject a

20  claimant's subjective complaints based solely on a lack of objective medical

21  evidence to fully corroborate the alleged severity of pain," but lack of objective

22  medical evidence may be one factor used to evaluate credibility.  *Bunnell*, 947

23  F.2d at 345; *see Rollins v. Massanari*, 261 F.3d 853, 856-7 (9th Cir. 2001)

24  (asserting a lack of corroborative objective medical evidence may be one factor

25  in evaluating credibility).  Here, both parties stipulated the ALJ's opinion fairly

26  and accurately summarizes the evidence in the record.  P. Mem. at 4; D. Mem. at

27  3.  The ALJ reviewed plaintiff's psychological evaluations including several

28  Global Assessment of Functioning ("GAF") scores attributed to plaintiff by

1   various medical practitioners.  AR at 13-15; *see* Am. Psychiatric Ass'n,

2   Diagnostic and Statistical Manual of Mental Disorders 34 (4th Ed. 2000)

3   ("DSM").  All of the scores were between 60 and 75, indicating at most

4   moderate symptoms and difficulty functioning.  AR at 14 & n.2, n.3; *see id.* at

5   569, 627, 629, 632, 635.  After review of the treatment records related to

6   plaintiff's back, the ALJ found "there is objective evidence of significant

7   degenerative disk disease," but the ALJ noted there was no surgical intervention

8   and, as discussed above, generally the ailment was conservatively treated.  *Id.* at

9   17-20; *see id.* at 363-66 (analyzing CT and MRI); *id.* at 489-90 (analyzing

10  subsequent MRI); *see, e.g.*, *id.* at 466-70, 484-86, 491-93, 571-575, 577, 580-84,

11  586-87, 601-604, 609-17 (evidencing plaintiff's exams and resulting

12  conservative treatment since the disability onset date).  Overall the objective

13  medical records do not support plaintiff's subjective complaints of totally

14  disabling back pain and anxiety.

15          In sum, the ALJ gave clear and convincing reasons for discounting

16  plaintiff's credibility, including his conservative course of treatment and

17  inconsistent daily activities.  The ALJ's finding is further supported by the

18  objective medical evidence.  The ALJ thus did not err in finding plaintiff's

19  subjective complaints only partially credible.

20                                          **V.**

21                                  **CONCLUSION**

22          IT IS THEREFORE ORDERED that Judgment shall be entered

23  AFFIRMING the decision of the Commissioner denying benefits, and dismissing

24  the complaint with prejudice.

25

26  DATED: January 20, 2016

27  _____

28  SHERI PYM
    United States Magistrate Judge

                                          14